IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 8:15-cr-00157-LKG |
| ABDELRAHIM AYYAD, | ) | |
| | ) | July 12, 2024 |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Defendant, Abdelrahim Ayyad, has moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 131.  This motion is fully briefed.  ECF Nos. 131, 135.  No hearing is necessary to resolve this motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court **DENIES** Mr. Ayyad's motion for compassionate release.

**II.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

**A.     Factual Background**

Mr. Ayyad is a 58-year-old prisoner, currently incarcerated at Federal Correctional Institution ("FCI") Fort Dix, located in Burlington County, New Jersey.  ECF No. 135 at 3.  Mr. Ayyad has been incarcerated since 2016, and he is serving a 174-month sentence after pleading guilty to four counts brought against him by the Government for his role in two armed robberies that occurred in the District of Maryland.  ECF No. 131 at 1-2; ECF No. 135 at 2.

The Offenses

Mr. Ayyad's conviction and sentence arise from his involvement in two armed robberies committed in the District of Maryland on June 18, 2014, and June 22, 2014.  ECF No. 131 at 1-2; ECF No. 135 at 5-6.  On February 1, 2016, Mr. Ayyad was charged in a four-count Superseding

---

[1] The facts recited in this memorandum opinion and order are derived from Mr. Ayyad's motion for compassionate release as supplemented and the Government's response in opposition thereto.  ECF Nos. 38, 62, 72, 83, 121, 131, 135.

Indictment with: (1) conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One); (2) interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Counts Two and Four); and (3) using, carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three). ECF No. 38. On May 31, 2016, Mr. Ayyad pled guilty to all four counts of the Superseding Indictment. ECF No. 62. On October 11, 2016, the Court sentenced Mr. Ayyad to 174 months of incarceration, followed by a term of five years of supervised release. ECF No. 83.

As background, in June 2014, Michael Burgess ("Burgess") and Mr. Ayyad planned the robbery of T.C. Martin Jewelers, located at 30105 Three Notch Road, Charlotte Hall, Maryland. ECF No. 72 at ¶ 6. Burgess recruited Furman Troy ("Troy") and Darrell Lee ("Lee") to help commit this robbery. *Id.*

On June 18, 2014, Mr. Ayyad drove in a black Escalade, bearing license plate number M713574, to Washington, DC, where he picked up Troy, Lee and Burgess. *Id.* at ¶ 7. Mr. Ayyad then drove Troy, Lee and Burgess down to 30105 Three Notch Road, Charlotte Hall, Maryland. *Id.* After arriving near T.C. Martin Jewelers, Mr. Ayyad handed Troy a firearm inside the Escalade, at which point Troy and Lee left the vehicle and entered T.C. Martin Jewelers. *Id.* Upon entering the store, Lee brandished a firearm at Victim #1, the owner of T.C. Martin Jewelers and Troy restrained Victim #1 using duct tape. *Id.* One of the robbers then demanded the key to the jewelry counter from Victim #2, an employee of T.C. Martin Jewelers, which Victim #2 provided. *Id.*

Troy and Lee stole U.S. currency, numerous pieces of jewelry valued at approximately $8,890.00, a MacBook Pro valued at approximately $2,100.00, and other items from T.C. Martin Jewelers. *Id.* Immediately after exiting T.C. Martin Jewelers, Troy and Lee got back into the Escalade where Burgess and Mr. Ayyad were waiting. *Id.* Troy and Lee handed Burgess and Mr. Ayyad the items stolen from T.C. Martin Jewelers before Mr. Ayyad drove Troy, Lee and Burgess back towards Washington, DC. *Id.*

Following the robbery of T.C. Martin Jewelers, Mr. Ayyad and Burgess approached Troy about committing a second robbery, this time at the New Market Pharmacy located at 29015 Three Notch Road, Mechanicsville, Maryland. *Id.* at ¶ 8. Troy and Lee agreed to commit the

robbery with Mr. Ayyad and Burgess.  *Id.*  And so, on June 22, 2014, Burgess and Mr. Ayyad drove down to New Market Pharmacy in a Toyota minivan, bearing license plate number 1AC9834.  *Id.* at ¶ 9.

Troy and Lee followed Burgess and Mr. Ayyad in a Jaguar.  *Id.*  After arriving near the New Market Pharmacy, Burgess and Mr. Ayyad waited outside the store in the minivan, while Troy and Lee went inside the store.  *Id.*  After entering the New Market Pharmacy, Lee brandished a firearm at Victim #3, an employee at the New Market Pharmacy, and Troy restrained Victim # 3 using duct tape.  *Id.*  Troy and Lee then stole U.S. currency, as well as numerous prescription bottles containing oxycodone, methadone, hydrocodone and endocet valued at approximately $8,997.00.  *Id.*  After exiting the store, Troy and Lee returned to the Jaguar.  Troy and Lee then followed Mr. Ayyad and Burgess, who drove the minivan away from the New Market Pharmacy.  *Id.*  Later that same day, Troy and Lee provided Burgess and Mr. Ayyad with the prescription bottles stolen from the New Market Pharmacy.  *Id.*

### Mr. Ayyad's Sentence

On May 31, 2016, Mr. Ayyad pleaded guilty to the charges brought against him in the Superseding Indictment.  ECF No. 62.  There was no written plea agreement between Mr. Ayyad and the Government.

The Court held a sentencing hearing on October 11, 2016.  ECF No. 83.  At the time of sentencing, Count Three of the Superseding Indictment—using, carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)—carried a mandatory minimum sentence of 84 months incarceration, to run consecutively with any other sentence.  ECF No. 135 at 4.

During the sentencing hearing, the Court treated Count One of the Superseding Indictment as two counts, each charging conspiracy to commit the substantive Hobbs Act Robberies in Counts Two and Four of the Superseding Indictment, pursuant to Application Note 8 of U.S.S.G. § 3D1.2.  ECF No. 83; ECF No. 72 at ¶ 16.  Pursuant to § 3D1.2(a) of the Sentencing Guidelines, Counts Two and Four of the Superseding Indictment did not group, because these counts involved separate victims and transactions.  ECF No. 72 at ¶ 17.

Pursuant to § 3D1.2(a) of the Sentencing Guidelines, Counts One and Two were grouped together, forming Group One (T.C. Martin Jewelers Robbery), and Count Four and Pseudo Count grouped together, forming Group Two (New Market Pharmacy Robbery). *Id.* at ¶¶ 15-18; ECF No. 129 at 6-10. As to Group One, the base offense level was 20, because the relevant offense involved Interference with Interstate Commerce by Robbery, pursuant to U.S.S.G. § 2B3.1. ECF No. 72 at ¶ 19. This offense level was increased by 2 levels, because Troy restrained Victim #1 using duct tape, pursuant to § 2B3.1(b)(4)(B), and an additional 2 levels, because Defendant was a leader of the offense, under § 3B1.1(c). *Id.* at ¶¶ 21-24. And so, the total offense level for Group One was 24. *Id.* at ¶ 26

As to Group Two, the base offense level was also 20, pursuant to U.S.S.G. § 2B3.1. *Id.* at ¶ 27. This offense level was increased by 2 levels, because Troy restrained Victim #1 using duct tape, pursuant to U.S.S.G. § 2B3.1(b)(4)(B), and an additional 2 levels, because Defendant was a leader of the offense, under § 3B1.1(c). *Id.* at ¶¶ 29, 33. The offense level was also increased by 5 levels because Lee brandished a firearm at Victim #1, pursuant to § 2B3.1(b)(2)(C); and by 1 level because Troy and Lee stole currency and numerous prescription bottles containing oxycodone, methadone, hydrocodone and endocet, pursuant to § 2B3.1(b)(6); and by an additional 1 level because the loss amount attributed to Defendant as a result of the robbery was at least $64,325.00 (greater than $20,000 but less than $95,000), pursuant to § 2B3.1(b)(7)(B). *Id.* at ¶¶ 28, 30, 31. And so, the adjusted offense level for Group Two was 31. *Id.* at ¶ 35.

The Court combined the total offense levels of both groups into a single group by transferring the total offense levels into units. *Id.* at ¶ 36. Group Two, which had the most serious offense level of 31, was counted as one unit. *Id.* Group One, with an offense level of 24, which was 5 to 8 levels less serious than Group Two, was counted as one-half unit. *Id.* The total number of units was 1.5, which resulted in an increase of one offense level. *Id.* And so, the combined adjusted offense level was 32. *Id.* at ¶ 39. The Court then granted a two-level reduction for Defendant's early acceptance of responsibility, for a total offense level of 30. *Id.* at ¶¶ 41-42.

With a Criminal History Category of I and total offense level of 30, the advisory guideline range of imprisonment for Counts One, Two and Four was 97 to 121 months, to run

consecutive to the mandatory minimum of 84 months of imprisonment as to Count Three.  *Id.* at ¶ 78.  And so, the Court sentenced Mr. Ayyad to 174 months of incarceration, followed by a term of five years of supervised release.  ECF No. 83.

<u>Mr. Ayyad's Request For Compassionate Release</u>

Mr. Ayyad seeks compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), upon the grounds that his severe health conditions and unusually long sentence of incarceration for a first-time offender constitute extraordinary and compelling reasons to reduce his sentence.[2]  ECF Nos. 121, 131, 140.  Specifically, Mr. Ayyad argues that he is suffering from a serious physical health condition—diverticulitis—that warrants compassionate release.  ECF No. 131 at 5**.**  Mr. Ayyad also represents that he was diagnosed with esophagitis—inflammation of the esophagus—in February 2021.  *Id.* at 7.

In July 2021, Mr. Ayyad underwent a colonoscopy.  *Id.*  Subsequently, Mr. Ayyad underwent an emergency gallbladder removal surgery and was diagnosed with acute cholecystectomy and bilateral pleural effusions with bibasilar subsegmental atelectasis—a partially collapsed lung due to fluid build-up between his lung lining and chest wall.  *Id.*  Since then, Mr. Ayyad has been assessed as a "high nutritional risk" and was told to take calorie and protein supplements.  *Id.*; ECF No. 133-4 at 145.  In this regard, Mr. Ayyad represents that he frequently skips one of the daily meals provided by the BOP, because he is unable to digest all three meals.  ECF No. 131 at 9.  As a consequence, Mr. Ayyad represents that he has "lost weight, feels constantly fatigued, and has begun to experience hypertension due to his inability to follow a proper diet for his personal medical needs."  *Id.*

Mr. Ayyad contends that "his lack of access to timely and adequate care for his serious medical conditions presents an extraordinary and compelling circumstance warranting compassionate release," because he has been subject to delayed treatment and infrequent appointments while incarcerated.[3]  *Id.* at 10-11.  Lastly, Mr. Ayyad contends that the relevant

---

[2] The parties agree that Mr. Ayyad exhausted his administrative remedies before directly petitioning the Court for compassionate release.  ECF No. 131 at 3; ECF No. 135 at 3.

[3] Mr. Ayyad also argues that a physician who has reviewed his medical records, Dr. W. Anthony Gerard, MD FAAFP, FACEP, has determined that the disabling nature of his chronic gastrointestinal disease, and

Section 3553(a) sentencing factors warrant a reduction of his sentence, because: (1) he has already served more than 86 months of his 174-month sentence and "has shown himself to be an exceptional inmate;" (2) continued incarceration is not necessary to protect the community from any future crimes; and (3) the amount of time served reflects the seriousness of his offense, promotes respect for the law and provides just punishment for the offense. *Id.* at 1, 13-18. And so, Mr. Ayyad seeks a reduction of his sentence to time served, to allow him to receive appropriate medical treatment in the community. *Id*. at 18.

## B. Procedural Background

On September 11, 2020, Mr. Ayyad filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 109; *see also* ECF Nos. 111, 112.  The Court denied that motion on November 30, 2020.[4]  ECF No. 113.

On February 10, 2023, Mr. Ayyad filed a second motion for a compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 121.  The Government filed its response in opposition to the motion on May 20, 2023.  ECF No. 128.  On January 2, 2024, Mr. Ayyad filed a supplemental motion for compassionate release.  ECF No. 131. On February 16, 2024, the Government filed a response in opposition to Mr. Ayyad's supplemental motion.  ECF No. 135. On April 4, 2024, Mr. Ayyad filed a reply brief.  ECF No. 140.

Mr. Ayyad's motion for compassionate release having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

## A. Compassionate Release

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see United*

---

the fact that treatment options that would be more readily available if Mr. Ayyad was released from prison, support his request for compassionate release.  ECF No. 131 at 5; *see also* ECF No. 133-11.

[4] Mr. Ayyad appealed the denial of his motion for compassionate release on December 28, 2020, and the United States Court of Appeals for the Fourt Circuit dismissed the appeal on January 26, 2021.  ECF Nos. 114, 117, 118.

*States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception to this rule is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  *United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug. 3, 2020).  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  *Id*.  The statute originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  And so, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Jarvis v. Stansberry*, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because Section 3582 "vests absolute discretion" in the BOP).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").[5]  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  This Court has held that 18 U.S.C. § 3582(c)(1)(A), as amended by the FSA, permits the Court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  *Wiggins*, 2020 WL 4436373, at *2.  And so, once a defendant has exhausted his administrative remedies, he may petition the Court directly for compassionate release.  *Id*.

---

[5] Under 18 U.S.C. § 3582(c)(1)(A), the Court may modify the defendant's sentence if, "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," it finds that:
> (i) extraordinary and compelling reasons warrant such a reduction; or
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under [18 U.S.C. §] 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

To be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his or her sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction in sentence; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13.  *Id*. at 3.  In this regard, Section 1B1.13 of the Sentencing Guidelines provides that:

> (a) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) extraordinary and compelling reasons warrant the reduction; . . .
> >
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a).  The Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t).  Relevant here, Section B1.13 of the Sentencing Guidelines provides that:

> (b) EXTRAORDINARY AND COMPELLING REASONS.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> > (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
> >
> > (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (B) The defendant is—
> >
> > > (i) suffering from a serious physical or medical condition,

8

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. §1B1.13(b).

## IV.    ANALYSIS

Mr. Ayyad seeks a reduction of his sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A), upon the grounds that his health conditions and unusually long sentence of incarceration constitute extraordinary and compelling reasons for compassionate release.   ECF Nos. 121, 131, 140.  Specifically, Mr. Ayyad argues that he is suffering from, among other things, diverticulitis and esophagitis, and that "his lack of access to timely and adequate care for his serious medical conditions presents an extraordinary and compelling circumstance warranting compassionate release."  ECF No. 131 at 5, 7, 10.

Lastly, Mr. Ayyad argues that the relevant Section 3553(a) sentencing factors warrant a reduction of his sentence, because: (1) he has already served more than 86 months of his 174-month sentence and "has shown himself to be an exceptional inmate;" (2) continued

9

incarceration is not necessary to protect the community from future crimes; and (3) the amount of time served reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense. *Id.* at 1, 13-18. And so, Mr. Ayyad requests that the Court reduce his sentence to time served, to allow him to receive appropriate medical treatment in the community. *Id*. at 18.

The Government opposes Mr. Ayyad's motion for compassionate release and argues that: (1) Mr. Ayyad's health conditions do not constitute extraordinary and compelling reasons to reduce his sentence and (2) Mr. Ayyad does not qualify for compassionate release under the applicable policy, because he has not shown that he no longer poses a danger to the community, nor that his release is consistent with the Section 3553(a) sentencing factors. ECF No. 135. And so, the Government requests that the Court deny Mr. Ayyad's motion for compassionate release. *Id*. at 26.

For the reasons that follow, Mr. Ayyad has neither shown that his health conditions constitute extraordinary and compelling reasons for compassionate release, nor that he no longer poses a danger to the community. And so, the Court DENIES Mr. Ayyad's motion for compassionate release.

### A. Mr. Ayyad Has Not Shown A Compelling And Extraordinary Reason To Warrant Compassionate Release

As an initial matter, Mr. Ayyad has not shown that his health conditions are a compelling and extraordinary reason to warrant his compassionate release. To be entitled to relief under Section 3582(c)(1)(A)(i), Mr. Ayyad must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction in sentence; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13. *See also United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug. 3, 2020). In this regard, Section 1B1.13 of the Sentencing Guidelines provides that:

> (a) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the

10

factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) extraordinary and compelling reasons warrant the reduction; . . .

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. §1B1.13(a).  Section 1B1.13 of the Sentencing Guidelines also provides that:

(b) EXTRAORDINARY AND COMPELLING REASONS.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—

(A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of

11

infectious disease, or (II) an ongoing public health emergency
declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the
defendant is at increased risk of suffering severe medical
complications or death as a result of exposure to the ongoing
outbreak of infectious disease or the ongoing public health
emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. §1B1.13(b).   And so, Mr. Ayyad must show, among other things, that his health

conditions constitute an extraordinary and compelling reason to warrant compassionate release.

*Id*.

Mr. Ayyad has not met this burden.  The Court first observes that Mr. Ayyad has shown

that he suffers from several gastrointestinal conditions.  ECF No. 131.  As Mr. Ayyad explains in

his motion, these health conditions cause bloating and occasional nausea, and interfere with his

ability to eat.  *Id.* at 6, 9.

While the Court appreciates the many challenges that Mr. Ayyad's gastrointestinal

conditions pose in a prison environment, the record before the Court makes clear that Mr. Ayyad

has received, and continues to receive, medical treatment for these health conditions while

incarcerated. *See* ECF Nos. 135-3, 135-4, 135-5, 135-6, 135-7, 135-8, 135-9.  Indeed, as Mr.

Ayyad acknowledges in his motion for compassionate release, he has received medical treatment

for, among other things, a perforated diverticulum, a colonoscopy, and emergency gallbladder

removal surgery during his term of incarceration.  ECF No. 131 at 12.

The evidence before the Court also shows that, Mr. Ayyad was diagnosed with

esophagitis in February 2021, he received medical care and was prescribed medication to treat

this condition.  ECF No. 135 at 20; ECF No. 135-7 at 17-18. The record before the Court also

shows that Mr. Ayyad has received counseling on consuming a high fiber diet, to address his

gastrointestinal conditions.  ECF No. 135 at 20; ECF No. 135-7 at 8, 37, 39.  Given this, the

record before the Court shows that Mr. Ayyad's health conditions, while serious, can be

managed in prison.  *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8,

2019) ("Chronic conditions that can be managed in prison are not a sufficient basis for

compassionate release.").

Mr. Ayyad argues that the BOP has failed to provide him with a proper diet to address his health conditions. ECF No. 131 at 8. But, this concern is not sufficient to show that his heath conditions "are particularly severe and render him unable to provide self-care." *See United States v. Kindambu*, 2023 WL 159767, at *3 (E.D. Va. Jan. 11, 2023) (internal quotation marks omitted) ("But for health conditions to justify a compassionate release, a defendant must show they are particularly severe and render him unable to provide self-care."). Rather, as Mr. Ayyad acknowledges in his motion for compassionate release, he has been able to navigate the challenges posed by the limited food options offered by BOP, by opting to limit the number of his daily meals. ECF No. 131 at 9.

Mr. Ayyad does argue with persuasion that he would have more medical treatment options, if he were not incarcerated. *Id.* at 5. But Mr. Ayyad's displeasure with the quality of the medical care and food provided by BOP is not sufficient to show an extraordinary and compelling reason for compassionate release. *See Weidenhamer*, 2019 WL 6050264, at *5 ("Defendant's disagreement with the type and amount of medical treatment provided by the Bureau of Prisons is not enough to establish her conditions cannot be accommodated while she is incarcerated."). There is also no evidence before the Court to show that Mr. Ayyad's health is deteriorating, or that his health is not expected to improve due to his gastrointestinal conditions.[6]

In short, the record before the Court makes clear that Mr. Ayyad's health conditions, while significant and challenging, have been diagnosed, treated and managed during his period of incarceration. There is also no evidence before the Court to show that Mr. Ayyad's health is deteriorating, or that he is not expected to recover.

For these reasons, Mr. Ayyad has not shown an extraordinary and compelling reason to reduce his sentence to time served. And so, the Court must DENY his motion for compassionate release.

---

[6] Mr. Ayyad does not cite to, and the Court is not aware of, any cases granting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), due to the type of gastrointestinal conditions at issue in this case. ECF No. 135 at 22.

**B.  Mr. Ayyad Has Not Shown That He Is No Longer A Danger To The Community**

Mr. Ayyad has also not met his burden to show that he no longer poses a danger to the community, as required by Section 1B1.13 of the Sentencing Guidelines.  To be entitled to relief under Section 3582(c)(1)(A)(i), Mr. Ayyad must show, among other things, that the sentence modification is "consistent" with the policy statement issued by the Commission in U.S.S.G. § 1B1.13.  *Wiggins*, 2020 WL 4436373, at *2.  U.S.S.G. §1B1.13 provides that the Court may reduce a term of imprisonment, if the Court determines, among other things, that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. §1B1.13(a)(2).  And so, Mr. Ayyad must also show that he no longer poses a danger to the community to prevail on his motion for compassionate release here.

Again, Mr. Ayyad has not met his burden.  Mr. Ayyad argues that he is no longer a danger to this community, because: (1) he received the minimum level score under the FSA for recidivism risk assessment; (2) he has taken advantage of educational and vocational opportunities while incarcerated; (3) he has served more than 86 months of his 174-month sentence; and (4) he is a family man with a wife and children.  ECF No. 131 at 13-17.  But the record in this case makes clear that the Court sentenced Mr. Ayyad to a period of incarceration for serious and violent crimes—committing two armed robberies.

The facts of this case also show that Mr. Ayyad had a leadership role in this criminal activity, because he chose the locations of the robberies, provided funds to execute the robberies and instructed others about what to steal.  ECF No. 129 at 37. While the Court agrees that Mr. Ayyad's conduct while incarcerated has been overall positive, this fact does not negate the serious and violent nature of the crimes that led to his incarceration.  Nor is the period of his incarceration to date sufficient to show that he no longer poses a danger to the community.  Because the Court shares the Government's concerns that Mr. Ayyad continues to present a danger to this community, Mr. Ayyad cannot show that he is not entitled to a reduction of his sentence to time served.

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Ayyad's motion for compassionate release.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge